## United States District Court
## District of Massachusetts

```
_____
                               )
Internal Revenue Service,      )
                               )
          Appellant,           )
                               )
          v.                   )    Bankruptcy Appeal No.
                               )    20-10156-NMG
Joseph H. Baldiga, Chapter 7   )
Trustee of the Estate of       )
Patrick and Elizabeth Hannon,  )
                               )
          Appellee.            )
_____)
```

### MEMORANDUM & ORDER

GORTON, J.

This is an appeal from a memorandum and decision of United States Bankruptcy Judge Melvin S. Hoffman of the United States Bankruptcy Court for the District of Massachusetts ("the Bankruptcy Court") on the final report and application for fees and expenses of the Trustee and the Trustee's counsel in In re Hannon, No. 1:12-bk-13862-MSH (Dec. 26, 2019).

## I.   **Background**

### A.  **The Maine Action and Bankruptcy Proceedings**

More than eight years ago, the Internal Revenue Service ("the IRS") filed a complaint against Patrick and Elizabeth Hannon ("the Hannons" or "debtors") in the United States

District Court for the District of Maine ("the Maine Action"). The complaint sought (1) approximately $7.6 million in joint income tax liabilities (Count I); (2) $300,000 for trust fund recovery penalties ("TFRPs") (Count II); and (3) enforcement of tax liens through sales of eight parcels of real property in Maine ("the Maine Parcels") (Count III).

In May, 2012, the Hannons filed a Chapter 11 petition in the Bankruptcy Court, scheduling $5,931,645 in assets, $5,665,000 of which pertained to the Maine Parcels. The Hannons' petition caused the automatic stay of the Maine Action. The IRS obtained relief from that stay to proceed with the Maine Action in November, 2012.

In January, 2013, the Chapter 11 bankruptcy was converted to Chapter 7 liquidation and Joseph H. Baldiga was appointed Trustee ("Baldiga" or "Trustee"). He moved to appoint his law firm, Mirick, O'Connell, DeMallie & Lougee, LLP, as his counsel, which was approved by the Bankruptcy Court.

The Trustee moved the Bankruptcy Court to modify the stay-relief order in the Maine Action so he could proceed with liquidation of the Maine Parcels. The IRS objected, arguing that it was better suited than the Trustee to sell the Maine Parcels. In February, 2013, the Bankruptcy Court clarified that the relief from stay for the IRS was limited to "quantifying the

- 2 -

[d]ebtors' tax liability [in the Maine Action]" and that the Trustee was allowed to proceed with liquidation.

In August, 2013, the Trustee and the IRS agreed to settle the Maine Action.  The Bankruptcy Court approved settlement in October, 2013, and the District Court entered final judgment in the Maine Action in November, 2013, that the Hannons are liable to the IRS for income tax years 1999-2001 in the amount of $7,844,190 on Count I and that Mr. Hannon is responsible for $82,598 in TFRPs on Count II.  Count III was dismissed without prejudice.  The breakdown of tax liabilities on Count I is as follows:

| Year | 1999 | 2000 | 2001 | Total All Years |
|---|---|---|---|---|
| **Tax** | $134,367[1] | $0 | $2,353,786 | $2,488,153 |
| **Penalty** | $471,072 | $336,682 | $754,812 | $1,562,567 |
| **Interest on Tax** | $591,803 | $473,179 | $1,800,974 | $2,865,956 |
| **Interest on Penalty** | $375,984 | $131,947 | $417,385 | $925,317 |
| **Fees** | $1,623 | $371 | $203 | $2,197 |
| **Total Each Year** | **$1,574,849** | **$942,180** | **$5,327,161** | **$7,844,190** |

[1] Contrary to the Bankruptcy Court, this Court has rounded all figures to the nearest dollar to simplify.

### B.  The Adversary Proceeding

In January, 2013, the Trustee brought an adversary proceeding ("the Adversary Proceeding") against the IRS in the Bankruptcy Court seeking avoidance under 11 U.S.C. § 724(a) of the secured claims of the IRS for penalties and interest on penalties and preservation of avoided claims for the benefit of the estate under § 551.[2]  The Trustee subsequently sought, and the IRS assented to, a stay of the Adversary Proceeding until liquidation of the Maine Parcels was complete.  The Assented-To Motion states that:

> the Parties have recently conferred regarding the within Adversary Proceeding and have agreed that it will be most cost-effective to allow the Trustee to complete his liquidation of all Estate assets before expending additional resources in the matter.

In December, 2013, the Bankruptcy Court stayed the Adversary Proceeding and suspended all deadlines while the Trustee completed his liquidation and recovery of all estate assets.  From entry of the stay through the end of 2015, the Trustee liquidated those assets.  Throughout that period, the Bankruptcy Court authorized various periodic interim disbursements of estate funds for payment of the Trustee and counsel fees.

---

[2] Except where otherwise noted, all section references are to the Bankruptcy Code, Title 11 of the United States Code.

The liquidation process was virtually complete by the end of 2015 except for expectant proceeds from an eminent domain action with respect to property located in Newton, Massachusetts ("the Eminent Domain Action").  While that lawsuit was pending, the Trustee was unable to complete liquidation.

In May, 2017, while the Eminent Domain Action remained pending, the Trustee moved for approval to make an interim distribution to the IRS of $800,000.  In that motion, the Trustee explained that, pursuant to his interpretation of §§ 551 and 724(a) and (b), the penalty portion of the IRS liens could be avoided and preserved for the estate.  That interpretation, which is disputed by the IRS, is the subject of this pending appeal.  The IRS claims that it disagreed with the Trustee's statutory analysis at the time but did not object because it agreed with the requested relief.

Final judgment was entered in the Eminent Domain Action in January, 2019, in favor of the Trustee.  Shortly thereafter, the Trustee filed a status report in the Chapter 7 proceeding notifying the Bankruptcy Court that, although the Eminent Domain Action was resolved, final distribution was premature because the Adversary Proceeding was not.

In February, 2019, the Trustee filed a motion for judgment on the pleadings in the Adversary Proceeding.  In that motion,

the Trustee incorporated his distribution argument by reference
and the IRS objected and cross-moved to dismiss the Adversary
Proceeding.  The Trustee then filed a motion to stay the
Adversary Proceeding until the Bankruptcy Court decided the
Trustee's fee application which the IRS opposed.  The Trustee
asserted that the substantive legal issues addressed in the
pending motions were dependent upon the aggregate amount of
allowed administrative expenses in the Chapter 7 proceeding.

In April, 2019, the Bankruptcy Court held a hearing in the
Adversary Proceeding ("the April Hearing") on the Trustee's
motion to stay, at which the Trustee stated that

> When we first started this case, right, we knew it was
> a tax case.  The best prospect would have been maybe —
> depending on where the fees came out — after
> liquidating all the assets, looking at the claims —
> was maybe we could free up something as a partial
> dividend to Chapter 11 [administrative fees].  So from
> day one of this case that was the best this was ever
> going to be was using 724(b), right, to invade [the
> IRS's] lien, pay [the IRS] most of the money, maybe
> use 724(a) to free up a little bit of money depending
> on how the fees came out, maybe not.  There was no
> guarantee, but this was always a tax [c]ase.

The Court understands the thrust of the Trustee's comments
to indicate that he, as guardian of the interests of all
creditors of the Hannons, understood it was his obligation
to pursue the possibility of some recovery by their
unsecured creditors.  The Trustee's comments further

indicate, however, that he suspected that such recovery was
unlikely given administrative fees and the IRS tax liens.

The Bankruptcy Judge made a tentative ruling during the
hearing that the Trustee and counsel were entitled to avoid the
penalty portions of the IRS's liens but denied the motion to
stay.  The Bankruptcy Judge further noted that he tentatively
agreed with the Trustee's statutory interpretation of §§ 551 and
724(a),(b).

In June, 2019, the parties agreed to entry of judgment in
the Adversary Proceeding consistent with the Court's tentative
ruling at the April Hearing but preserved all rights of appeal.
The parties further agreed that judgment would not be entered
until the Bankruptcy Court resolved the issue regarding the
interaction between §§ 551 and 724(a),(b).  The parties
concluded that it would be more efficient for the Bankruptcy
Court to determine that issue along with final allowance of
compensation for the Trustee and counsel or, alternatively, upon
a final distribution of estate assets.  The Bankruptcy Court
allowed the motion and held the Adversary Proceeding in abeyance
pending resolution of the related matters in the Chapter 7
proceeding.

### C.  Request for Fees

While the Bankruptcy Court held the Adversary Proceeding in abeyance, the Trustee began preparing his final report and request for compensation with respect to the Chapter 7 proceeding.  In October, 2019, the Trustee filed: (1) the Trustee's Final Report ("the TFR"), (2) his request for compensation and (3) his law firm's request for legal fees.

The TFR concludes that the Trustee realized gross receipts of $3,577,821, of which $2,774,170 was available for distribution because of bank fees and other payments.  The Trustee proposed allocating $1,641,505 toward Chapter 7 administrative expenses, including compensation for the Trustee and fees for his counsel, and $1,132,665 to the IRS.  Those amounts included prior interim disbursements of $1,294,308 for administrative expenses and $800,000 to the IRS.  The proposed final distribution was, therefore, $347,195 for administrative expenses and $332,665 to the IRS.  As a result, the Trustee contended, Chapter 7 administrative expenses would be paid in full, the IRS would be paid approximately 21% of the amount it agreed to in settling the Maine Action (less penalties and interest on penalties) and no other disbursements would be made.

The Trustee requested compensation of $130,585 which included all prior interim disbursements.  That was the maximum

allowable by statute.  His law firm requested fees of
$1,048,464, which included prior interim disbursements, and
expenses of $57,497.

The IRS objected to the TFR, the Trustee's request for
compensation and the law firm's request for fees.  The
Bankruptcy Court convened a hearing in November, 2019, at which
the argument dwelt primarily on the Trustee's statutory
interpretation of §§ 551 and 724(a) and (b) and on whether he
properly administered the estate pursuant to that legal
construction.  At that hearing, the Trustee suggested that he
had been mistaken at the April Hearing when he said that he
believed that from the beginning of this case,

> [t]he best prospect [was] . . . [to] free up
> something as a partial dividend to Chapter 11
> [administrative fees],

which insinuated that he thought it unlikely that any
disbursements would be made to unsecured creditors.

### D.  Statutory Context

A brief review of the relevant provisions of the Bankruptcy
Code is necessary to frame the decision of the Bankruptcy Court
and the arguments of the parties.

A trustee appointed to administer the assets of an estate
in a Chapter 7 bankruptcy proceeding must "collect and reduce to

money the property of the estate." § 704.  In doing so, the trustee has a duty "to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors." United States v. Charles Sims (In re Feiler), 218 F.3d 948, 952 (9th Cir. 2000).  A bankruptcy court may, in its discretion, award a trustee "reasonable compensation for actual, necessary services . . . [and] expenses." § 330(a)(1).  A trustee may not, however, be compensated for "services that were not reasonably likely to benefit the debtor's estate." § 330(a)(4)(A)(ii).

The parties in this case vigorously dispute whether, in administering the estate during the Relevant Time Period, the Trustee and counsel performed services that were reasonably likely to benefit the debtor's estate.  The disagreement primarily involves the interaction of three statutory provisions: §§ 551, 724(a) and 724(b).

Consistent with a trustee's obligation to maximize the value of the assets of the estate, a trustee may, in certain circumstances, abandon property rather than liquidate its value if its encumbrances render it valueless to unsecured creditors. In re Bolden, 327 B.R. 657, 667 (Bankr. C.D. Cal. 2005). Property may be abandoned upon the initiative of a trustee or pursuant to a court order based upon the request of an

interested party if the property is "burdensome" or of "inconsequential value" to the estate. § 554.

In administering the estate, a trustee may also "avoid" certain liens or encumbrances, a modification of the general rule that secured liens typically survive bankruptcy unaffected. §§ 724 and 726; see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."). Section 724(a) provides that a trustee may "avoid a lien that secures a claim of any kind specified in [§ 726(a)(4)]." Any lien avoided under § 724(a) "is preserved for the benefit of the estate but only with respect to property of the estate." § 551.

Sections 724(b) and 726 describe the method of distribution of liquidated assets to secured and unsecured creditors of the estate. While § 724(b) outlines the distribution of property subject to an allowed, unavoidable lien, § 726 identifies the method of distribution with respect to remaining creditors.

### E. The Bankruptcy Court's Decision

In December, 2019, the Bankruptcy Court entered its Memorandum of Decision on the Trustee's Final Report and Final Applications for Fees and Expenses of the Trustee and Counsel ("the Decision"). That Decision approved an award of $121,585

in Trustee fees (a reduction of $9,000 from the requested
amount) and $971,464 in legal fees (a reduction of $77,000 from
the requested amount) as well as $57,497 in expenses.

The Bankruptcy Judge considered the compensation requests
by dividing them into three time periods: (1) from the date of
the Trustee's appointment through the entry of judgment on
November 6, 2013, in the Maine Action, at which point the IRS
tax liens became fixed; (2) from November 6, 2013, through the
end of 2015, by which time the liquidation process had been
substantially completed; and (3) from 2016 onward.

Applying the criteria set forth in § 330, the Bankruptcy
Judge awarded all requested compensation for the first time
period because

> [considering the] complicated and multifarious nature
> of the assets of the estate, their values as scheduled
> by the debtors, and the unsettled amount of the IRS's
> claim being litigated in the federal court in Maine,
> the trustee's decision to administer the estate's
> assets in an effort to generate a dividend to
> unsecured creditors rather than abandoning those
> assets was a reasonable one.

With respect to the second time period, the Bankruptcy
Judge determined that it was reasonable pursuant to § 330 for
the Trustee to administer the estate's assets because

> By that time the [T]rustee had developed a litigation
> strategy to attempt to avoid a portion of the lien
> securing the IRS's claim and to preserve the avoided
> lien for the benefit of other creditors of the estate.

Accordingly, the Bankruptcy Judge approved the request for compensation for fees incurred from November 6, 2013, through the end of 2015.

The Bankruptcy Judge agreed with the IRS, however, that compensation was not warranted from 2016 onward because it should have been apparent to the Trustee from that point that the IRS would be the sole beneficiary of the cash in the estate after payment of Chapter 7 administrative expenses.  For that reason, the Trustee should have abandoned the subject assets in 2016 because continued administration was no longer reasonably likely to benefit the estate.  The Bankruptcy Court determined that abandonment would have saved the estate approximately $9,000 in Trustee fees and $77,000 in legal fees and, therefore, reduced recoverable compensation by those amounts.

The only issue on appeal is whether the Bankruptcy Court erred in allowing compensation for the Trustee and fees for his counsel for services rendered during the second period, from November 6, 2013, through the end of 2015 ("the Relevant Time Period").

## II.  **Bankruptcy Appeal**

### A.  Legal Standard

Pursuant to 28 U.S.C. § 158(a), a district court has jurisdiction to hear an appeal of a decision of a bankruptcy court.  A district court conducts its review of such an appeal "in the same manner" as the court of appeals reviews a district court's decision. Casco Northern Bank v. DN Assocs. (In re DN Associates), 3 F.3d 512, 515 (1st Cir. 1993).  The legal conclusions of a bankruptcy judge, including those regarding the legal construction of the Bankruptcy Code, are reviewed de novo. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995).

Factual findings are reviewed for clear error. Id.  A district court should give "considerable deference" to the factual determinations and discretionary judgments of a bankruptcy judge. In re DN Associates, 3 F.3d at 515.  Mixed questions of law and fact are reviewed "for clear error unless [a bankruptcy court's] analysis was infected by legal error." SW Boston Hotel Venture, LLC v. City of Boston (In re SW Boston Hotel Venture, LLC), 748 F.3d 393, 402 (1st Cir. 2014).  The findings of a bankruptcy court are clearly erroneous if "after a review of the entire record," the district court is "left with the definite and firm conviction that a mistake has been

committed." <u>R&R Assocs. of Hampton</u> v. <u>Thomas, Jr.</u> (<u>In re R&R</u>
<u>Assocs. of Hampton</u>), 402 F.3d 257, 264 (1st Cir. 2005) (quoting
<u>Groman</u> v. <u>Watman</u> (<u>In re Watman</u>), 301 F.3d 3, 8 (1st Cir. 2002)).

The quantification of fees by a bankruptcy judge is
reviewed for abuse of discretion. <u>Berliner</u> v. <u>Pappalardo</u> (<u>In re</u>
<u>Sullivan</u>), 674 F.3d 65, 68 (1st Cir. 2012).  A bankruptcy judge
"enjoys particularly great leeway" in awarding fees, <u>Prebor</u> v.
<u>Collins</u> (<u>In re I Don't Trust</u>), 143 F.3d 1, 3 (1st Cir. 1998),
and such an award should be set aside

> only if it clearly appears that the [bankruptcy] court
> ignored a factor deserving significant weight, relied
> upon an improper factor, or evaluated all the proper
> factors (and no improper ones), but made a serious
> mistake in weighing them.

<u>In re Sullivan</u>, 674 F.3d at 68 (quoting <u>Gay Officers Action</u>
<u>League</u> v. <u>Puerto Rico</u>, 247 F.3d 288, 292-93 (1st Cir. 2001)).

### B.  Arguments of the Parties

The IRS contends that the Decision should be reversed and
remanded because the Bankruptcy Judge failed to consider whether
the services of the Trustee and counsel rendered during the
Relevant Time Period were reasonably likely to benefit the
estate pursuant to § 330(a)(4)(A).  According to the IRS, if the
Bankruptcy Court had applied the correct legal standard, it
could not have deemed fees incurred after the parties settled

the Maine Action on November 6, 2013, compensable.  The IRS
submits that after the unavoidable tax liens owed to the IRS
were fixed on that date, it was unreasonable to conclude that
any distribution to the unsecured creditors of the estate was
likely and, therefore, the Trustee should have abandoned the
property.

The Trustee responds that he acted reasonably in continuing
to liquidate the assets of the estate after November 6, 2013,
because (1) he identified and acted upon a theory to utilize
§§ 551 and 724 to avoid tax penalties and preserve those funds
for the estate, which the Bankruptcy Court tacitly approved,
(2) the IRS failed to object to continued liquidation or to file
a motion for abandonment, and (3) the IRS explicitly agreed to
the continued liquidation after its lien amounts were fixed.

**C. Analysis**

This appeal addresses two intertwined issues: (1) whether
the Bankruptcy Court conflated §§ 330(a)(3) and 330(a)(4)(A) in
its consideration of the Trustee's request for fees for services
rendered during the Relevant Time Period; and (2) whether, even
if the Bankruptcy Court applied the correct legal standard, it
nonetheless erred in accepting the Trustee's statutory
interpretation of §§ 551 and 724 and awarding fees for services
rendered during the Relevant Time Period.

### 1. Whether the Bankruptcy Court Applied the Proper Legal Standard

Section 330 provides specific criteria for a bankruptcy court to consider in determining whether and to what extent services rendered by a trustee are compensable. A bankruptcy court may award "reasonable compensation for actual, necessary services" in an amount to be determined after "taking into account all relevant factors," including six factors outlined in the statute. § 330(a)(1)(A), (a)(3). Pursuant to § 330(a)(4)(A), compensation cannot be awarded for services that are not reasonably likely to benefit the estate, <u>i.e.</u>, when they will not likely generate value for the estate's unsecured creditors. <u>DeGiacomo</u> v. <u>Traverse</u> (<u>In re Traverse</u>), 753 F.3d 19, 29 (1st Cir. 2014).

The Decision plainly considers whether the Trustee's liquidation of property during the Relevant Time Period was likely to benefit the estate. Although the Bankruptcy Judge directly cited § 330(a)(4)(A) only once, the majority his Decision is dedicated to whether the Trustee's legal strategy of avoiding tax penalty liens and preserving them for the estate's unsecured creditors was non-frivolous and plausible. The Decision ultimately concludes that the Trustee's pursuit of that legal strategy was compensable at least until the end of 2015.

The Bankruptcy Judge's rejection of fees for services rendered after 2015 further demonstrates that he properly applied § 330(a)(4)(A).  The Bankruptcy Court concluded that

> [b]y the beginning of 2016, it should have been apparent to the [T]rustee that . . . the IRS would be the sole beneficiary of the cash in the estate after payment of the expenses of administration. . . .

In so concluding, the Bankruptcy Court necessarily determined that before the beginning of 2016, it was not unreasonable for the Trustee to continue his effort to benefit the unsecured creditors of the estate and, therefore, he was entitled to recover fees for such services to that point.

Similarly, with respect to services rendered from the time of the Trustee's appointment until November 6, 2013, the Bankruptcy Judge held, citing generally to § 330, that the Trustee's determination that he should continue with liquidation rather than abandon assets was reasonable.

Perhaps the Bankruptcy Judge could have been more precise and careful with his citations but he nevertheless applied the proper legal standard and, therefore, did not abuse his discretion.

### 2. Whether Services Rendered During the Relevant Time Period Were Reasonably Likely to Benefit the Estate

When the tax liens of the IRS were fixed on November 6, 2013, it became clear that those liens, plus the fees of administration of the estate, exceeded the value of the estate. That recognition notwithstanding, the Trustee consistently maintained that payment to unsecured creditors was reasonably likely through avoidance of the penalty and interest on penalty portions of the tax liens pursuant to §§ 551 and 724.  The IRS protests that the Trustee's statutory interpretation was clearly unreasonable.

### a. Standard of Review

Initially, the parties disagree as to the standard of review this Court should apply to this issue.  The IRS seeks de novo review because the Bankruptcy Court's award of fees turns on the construction of §§ 551 and 724 and, therefore, is a legal question.  The Trustee urges an abuse of discretion standard because the Bankruptcy Court applied the proper legal standard in reaching its determination.  This Court agrees with the IRS. Where, as here, an award of compensation to a trustee depends upon the legal construction of provisions of the Bankruptcy Code the Court reviews the Bankruptcy Court's analysis de novo. See

Jubber v. Christensen (In re Bird), 577 B.R. 365, 373 (10th Cir.
BAP 2017).

### b. Statutory Construction

The precise legal question presented to this Court is
whether a trustee can avoid tax penalties and interest on tax
penalties under § 724(a) and preserve those avoided funds for
the estate's unsecured creditors pursuant to § 551.  In effect,
this would allow the Trustee to set aside the penalty and
interest on penalty amounts of secured IRS tax liens and pay
those amounts toward unsecured claims rather than later
recorded, unavoidable liens.  The IRS rejoins that the text and
legislative history of § 724(b) demonstrate that the Trustee's
legal theory is ill-conceived and that any avoided tax penalties
should be applied toward later-recorded, unavoidable liens
rather than reserved for unsecured creditors.

In hindsight, application of either theory in this case
would have ultimately resulted in funds being distributed only
to the IRS and for estate administration fees with no funds
remaining for unsecured creditors.  That is not dispositive of
the issue, however, because if the Trustee's theory has any
merit, he was justified in pursuing the perceived opportunity
for unsecured creditors and he and counsel are entitled to
compensation for services rendered during the Relevant Time

Period.  If the IRS is correct and if the Trustee should have known that, then he should have abandoned the estate on November 6, 2013, recognizing there was no potential for unsecured creditors to recover.

Section 724(a) provides that a "trustee may avoid a lien that secures a claim of a kind specified in § 726(a)(4)."  Such liens include tax penalties and any interest on such penalties, assessed by the IRS. § 726(a)(4).  Any lien avoided under § 724(a) "is preserved for the benefit of the estate." § 551.  Taken together then, §§ 724(a), 726(a)(4) and 551 authorize "a chapter 7 trustee to avoid a lien to the extent the lien secures a claim for a penalty, including a tax penalty" and preserve that lien for the benefit of the estate. Gill v. Kirresh et al. (In re Gill), 574 B.R. 709, 716 (9th Cir. BAP 2017); see also Holloway v. Stevens (In re Odom Antennas, Inc.), 340 F.3d 705, 708 (8th Cir. 2003).

Examination of the purpose underlying §§ 724(a) and 551 supports that conclusion.  Section 724 is intended

> to protect unsecured creditors from the debtor's wrongdoing.  Enforcement of penalties against a debtor's estate serves not to punish the delinquent taxpayers, but rather their entirely innocent creditors.  Innocent creditors should not be punished for the actions of delinquent debtor taxpayers.

In re Gill, 574 B.R. at 716 (internal citations omitted).  In
essence, § 724(a) protects unsecured creditors from being
punished for a debtor's delinquency. In re Bolden, 327 B.R. at
664.

Section 551 is intended to prevent holders of junior liens
from recovering a windfall when a trustee avoids a senior lien.
Tennessee Machinery Co. et al. v. Appalachian Energy Indus.,
Inc. et al. (In re Appalachian Energy Indus., Inc.), 25 B.R.
515, 516-18 (Bankr. E.D. Tenn. 1982).  In the absence of § 551,
the avoidance of a senior lien would shift rank and priorities
so that each junior lienor would, in effect, receive an enhanced
position. Id.  In such circumstances, the unsecured creditors
for whose benefit the trustee originally avoided the lien
pursuant to § 724(a) would be enriched only if equity remained
in the estate after satisfying all junior liens. Id.  Section
551, therefore, operates to preserve avoided liens for the
estate.

Although sparse, the extant case law is entirely consistent
with the Trustee's position that penalties may be avoided
pursuant to § 724(a) and preserved for unsecured creditors
pursuant to § 551 rather than paid to holders of later recorded
liens.  For example, in United States v. Hutchinson (In re
Hutchinson), No. 19-cv-01631, 2020 WL 2112275 (Bankr. E.D. Cal.

May 1, 2020), the government moved for the Trustee to abandon
the estate's property because continued liquidation was not
reasonably likely to benefit the estate's unsecured creditors.
Id. at *1-*2.   The Bankruptcy Court denied the motion for
abandonment because it concluded that the penalty portion of
each IRS tax lien could be avoided and preserved for the benefit
of the unsecured creditors and not simply paid out to satisfy
the unavoided portion of the next-in-line IRS tax lien. Id. at
*2.   The district court agreed. Id. at *8-*9. See, e.g., In re
Bolden, 327 B.R. at 665 ("By avoiding the penalty portions of
the tax liens and preserving them for the benefit of the
creditors, the estate is enriched while the IRS still obtains
the principal portion of its liens with interest, in the order
and priority of each respective lien."); In re Gill, 574 B.R. at
716 (holding that §§ 551 and 724 "expressly authorized [the
trustee] to avoid, subordinate and preserve the penalty portion
of the IRS's tax lien for the benefit of the estate's unsecured
creditors").

The IRS proffers no rebutting citation.  It relies instead
on its interpretation of the text and legislative history of
§ 724(b) which applies to

> [p]roperty in which the estate has an interest and
> that is subject to a lien that is not avoidable under

this title . . . and that secures an allowed claim for
tax.

Section 724(b) goes on to provide distribution guidelines for
such property.  The IRS contends that § 724(b) ensures that
proceeds from tax-lien-encumbered property accrue to the estate
only after all unavoidable liens have been satisfied.  The IRS
further submits that § 724 should not be construed as allowing
the avoidance of the penalty portion of tax liens to deplete the
IRS's recovery of unavoidable tax liens.  According to the IRS,
allowing a penalty to be avoided and thereby reduce the IRS's
own recovery would penalize it for the debtor's wrongdoing and
award unsecured creditors a windfall at the expense of tax
collection.

On its face, the IRS's argument is enticing.  Even a
cursory reading of §§ 724(a) and (b), 726 and 551, however,
reveals an inherent flaw.  By avoiding the penalty and interest
on penalty portions of the IRS liens, those funds are no longer
"not avoidable" and, therefore, not subject to § 724(b).  The
relevant provisions, as discussed above, make clear that
distributing funds from an estate to compensate the IRS for a
tax penalty rather than preserving such funds for the unsecured
creditors is disfavored because such a penalty does not reflect
"damages for actual pecuniary loss suffered by the [IRS]."
§ 726.  That is the reason § 724(a) provides for the avoidance

of the penalty portion of a lien for the benefit of the estate and not for the benefit of holders of later recorded liens. <u>See In re Hutchinson</u>, 2020 WL 2112275, at *8.

Accordingly, the reading of § 724(b) by the IRS to preclude a trustee from avoiding the penalty portion of a tax lien for the benefit of the estate is misleading.  Having so concluded, the Court proceeds to consider whether the Trustee is entitled to compensation for services rendered during the Relevant Time Period pursuant to § 330(a)(4)(A).

### c. Reasonableness of Continued Liquidation

The Trustee contends that several factors demonstrate that his legal strategy to benefit the unsecured creditors was reasonable.  During the Relevant Time Period, the Trustee had yet to liquidate several estate assets, including real property in Massachusetts, rights to income from royalty agreements, surety bonds and prospective recoveries from litigation.  Both the value of such assets and the administrative expense to be incurred to liquidate them was unknown during the Relevant Time Period.

The Trustee further submits that there was a potential for the avoidance of the IRS's tax penalties and interest on those penalties and thereby preservation of more than $2.4 million for

the estate.  He estimated that the combination of recovering a significant amount of cash from avoiding IRS penalties and liquidating additional property was reasonably likely to result in a distribution to unsecured creditors.

Considering those complex and uncertain factors, this Court agrees that there was a reasonable likelihood that continued liquidation of the property during the Relevant Time Period could have benefited the estate pursuant to § 330(a)(4)(A).  The Bankruptcy Court did not commit error in so concluding.

The conduct of the IRS throughout the Relevant Time Period further supports that conclusion.  From the outset of the liquidation process, the Trustee informed the Bankruptcy Court and the IRS about his legal strategy regarding §§ 551 and 724. The IRS initially objected to the Trustee proceeding with liquidation in January, 2013, but, after the Bankruptcy Judge disagreed, the IRS affirmatively assented to the Trustee proceeding with liquidation (while reserving its right to object).  At no point before or during the Relevant Time Period did the IRS move for the Trustee to abandon the property. Instead, in an assented-to motion filed in the Adversary Proceeding in December, 2013, during the Relevant Time Period, the parties sought a stay because they had determined that

> it [would] be most cost-effective to allow the Trustee
> to complete his liquidation of all Estate assets
> before expending additional resources in the matter.

That language further suggests that, at least in December, 2013, the parties agreed that continued liquidation of the estate's assets by the Trustee was potentially beneficial for the estate.

The IRS submits that the Trustee's concession at the April, 2019, hearing demonstrates that he was aware from the beginning of this case that no distribution would be made to creditors after liquidation.  The Bankruptcy Court, however, implicitly accepted the Trustee's explanation that he had misspoken and, in any event, this Court finds that the factors described above outweigh a single statement made by the Trustee in a long and convoluted proceeding.

Accordingly, the Bankruptcy Court did not err in awarding compensation to the Trustee and legal fees to his counsel for services rendered during the Relevant Time Period.

**ORDER**

For the foregoing reasons, the memorandum and decision of United States Bankruptcy Judge Melvin S. Hoffman of the United States Bankruptcy Court for the District of Massachusetts on the final report and application for fees and expenses of the Trustee and the Trustee's counsel in In re Hannon, No. 1:12-bk-13862-MSH (Dec. 26, 2019) is **AFFIRMED**.


**So ordered.**


                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge


Dated July 16, 2020